UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JENNIFER P., Plaintiff, | : | |
| v. | : | C.A. No. 26-344-PAS |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, Defendant. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On February 7, 2024, Plaintiff Jennifer P., a "younger" individual with limited past work history, filed an application for Supplemental Security Income ("SSI") under the Social Security Act. After her application was denied by an administrative law judge ("ALJ"), Plaintiff filed this case to appeal from the administrative determination denying her application. Now pending before the Court is Plaintiff's motion to reverse the decision of the Commissioner and to remand the case for an award of benefits or for further proceedings. ECF No. 9. Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 10. Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

## I. Background

On application, Plaintiff alleged disability beginning on June 1, 2022, based only on mental impairments that are not now in issue. Tr. 10, 12, 192, 233. Not mentioned in her application, Plaintiff had past medical history of sciatica and, during the period in issue, was diagnosed with and treated for lumbar radiculopathy.[1] Tr. 359, 554. And while her application

[1] This impairment was accepted by the ALJ and the related symptoms were incorporated into Plaintiff's RFC. She has not challenged this aspect of the ALJ's decision.

was pending, on April 4, 2024, Plaintiff experienced a fall in her home. Tr. 421. Following the fall, she began to complain of pain, numbness, tingling and weakness in the left shoulder, elbow and arm. Tr. 417-2, 467-74, 521-25. At University Orthopedics, a physician assistant noted that the x-ray showed mild degenerative changes and tentatively diagnosed "impingement syndrome of the left shoulder, rotator cuff tendinitis, possibly complicated by cervical radiculopathy vs carpal tunnel syndrome ["CTS"]." Tr. 524-25 (emphasis supplied). Ultimately, after clinical testing (NCV and EMG) revealed abnormality only with the left ulnar motor nerve ("mildly demyelinating ulnar neuropathy across the elbow"), including "no evidence of a median mononeuropathy nor a cervical radiculopathy," Tr. 573-74, Dr. Michel Arcand of University Orthopedics diagnosed these symptoms as caused by the medically determined conditions of pain of the left elbow joint, tendinitis of the left rotator cuff, lateral epicondylitis of the left humerus and ulnar nerve entrapment at the elbow. Tr. 563. Dr. Arcand did not diagnose either cervical radiculopathy or CTS. He treated Plaintiff for tendinitis of the left rotator cuff, including with a series of injections, which he noted "provided some relief." E.g., Tr. 558, 668, 670. As Dr. Arcand confirmed, "Patient has signs and symptoms consistent with left ulnar neuropathy." Tr. 563. Because of timing,[2] University Orthopedics' diagnostic examination/testing and Dr. Arcand's diagnosis and treatment of Plaintiff's left shoulder/arm/elbow were not seen by the non-examining experts.

Except for the University Orthopedic records leading up to and including Dr. Arcand's diagnoses of and treatment for the left-shoulder/arm/elbow sequalae of the April 2024 fall, all of Plaintiff's impairments – both mental health related and somatic – were considered during the initial and reconsideration phases of Plaintiff's SSI application. This included a report generated

[2] Although Plaintiff's fall was in April 2024, she did not follow up regarding her left shoulder/arm/elbow pain and numbness with University Orthopedics until October 2024. Tr. 521.

several months after the fall, in July 2024, based on Plaintiff's examination by a consulting provider, APRN Susan McKenna, who examined, *inter alia*, the left shoulder, elbow, arm and hand. Tr. 502-06. The non-examining experts considered Nurse McKenna's findings of no atrophy, normal strength and normal range of motion, normal grip and pinch strength and the ability to lift her arms above her head, albeit with reported pain in arms. Id.; see Tr. 63, 74. Based on this record and the lack of any other evidence of symptoms impacting Plaintiff's upper extremities, both experts opined that Plaintiff has severe impairment of the skeletal spine, but that her RFC[3] permitted her to perform medium exertional work with some postural limits and no manipulative limits. Tr. 65, 67, 76, 78-79.

After Plaintiff's claim was denied at the initial and reconsideration phases, an ALJ reviewed the entire record, including the newly available records from University Orthopedics reflecting Dr. Arcand's diagnoses and treatment of the numbness, tingling and pain in the left shoulder/arm/elbow. See Tr. 10-26. The ALJ questioned Plaintiff about these symptoms during the hearing. Tr. 44-46. The ALJ specifically asked Plaintiff about the reference in the medical records about "a problem in [her] neck or possibly some carpal tunnel on the left side." Tr. 46. Plaintiff testified that these symptoms are related to "mostly [her] shoulder and [her] elbow." Id.

In his decision, the ALJ accepted all of Dr. Arcand's newly diagnosed impairments as severe at Step Two and accepted in part Plaintiff's subjective statements about the impact of the left arm/shoulder/elbow impairments on her ability to function. Tr. 12-13, 16-19. The ALJ appropriately explained his treatment of these subjective statements as influenced by Plaintiff's testimony about her activities, as well as records from the time of and after the fall that reflected

[3] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

normal range of motion, full strength, normal imaging of the cervical spine and Nurse McKenna's largely normal physical examination. Tr. 17-18. Based on these findings, the ALJ found Plaintiff to be more limited – capable only of light, not medium exertional work, with greater postural limits and limits on reaching and handling with the left upper extremity – than is reflected in the findings of the state agency non-examining expert physicians. Tr. 19. Importantly, no medical opinion from any source has opined that Plaintiff is more limited than the ALJ's RFC reflects. With this RFC, the ALJ found that Plaintiff is able to work. Tr. 20-21.

Plaintiff argues that the ALJ's handling of her claim is tainted by two errors. First, she contends that he erred at Step Two when he rejected as not medically determinable impairments the two "possible" diagnoses – cervical radiculopathy and CTS – mentioned by the physician assistant but rejected by Dr. Arcand after the test results were procured. Second, she argues that it is reversible error for an ALJ to find the claimant more limited than is reflected in the prior administrative findings of the non-examining experts.

## II. Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g); 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla and must do more than merely create a suspicion of the existence of a fact. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). Further,

while "more than a scintilla of evidence is required to meet the benchmark, a preponderance of evidence is not." Clark v. Kijakazi, 673 F. Supp. 3d 119, 122 (D.N.H. 2023) (cleaned up). The determination of substantiality is based on an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022). If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3). The impairment must be severe, making the claimant

unable to do previous work, or any other substantial gainful activity which exists in the national economy. Id.; 20 C.F.R. §§ 416.905-06, 416.909-11.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. 20 CFR § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 416.920(a)(4)(v). The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); see Ulitsch v. U.S. Soc. Sec. Admin., No. 24-cv-00074-PB, 2025 WL 691054, at *4 (D.N.H. Mar. 4, 2025) ("claimant bears the burden at the first four steps to prove by a preponderance of the evidence that they are disabled").

## IV. Analysis

### A. ALJ's Step Two Findings

Plaintiff argues that remand is required because the ALJ erred at Step Two when he rejected as not medically determinable impairments the two "possible" diagnoses – cervical radiculopathy and CTS – mentioned by the physician assistant as possible but rejected by Dr.

Arcand. The problem with Plaintiff's argument is that it rests on a factually wrong foundation – the proposition that three medical professionals at University Orthopedics definitely diagnosed both cervical radiculopathy and CTS. This is simply not accurate.

As the Commissioner points out and the Court's review of the record confirms, the first of the three providers to which Plaintiff cites (a physician assistant) noted (before clinical test results – NCV and EMG – were obtained) the possibility that there might be underlying cervical radiculopathy or CTS. However, the follow-up testing ruled out cervical radiculopathy ("no evidence of . . . a cervical radiculopathy") and identified the affected nerve ("ulnar") with "no evidence of median mononeuropathy," effectively ruling out CTS. Tr. 573. At the next appointment at University Orthopedics in December 2024, Dr. Arcand reviewed these test results, performed a detailed physical examination and made the diagnoses that the ALJ accepted – NOT cervical radiculopathy and NOT CTS. Tr. 559-63. And at the next two appointments in April and August 2025 (to which Plaintiff inaccurately points as evidence of diagnoses of both cervical radiculopathy and CTS), the provider is Dr. Arcand,[4] and the diagnoses are the same – NOT cervical radiculopathy and NOT CTS. Tr. 555-58, 668-70. Thus, the ALJ's factual foundation for his Step Two finding is correct – this record has no "objective evidence" to support the establishment of cervical radiculopathy and CTS as medically determinable impairments. Tr. 13. And there also is no supportive subjective evidence in that, when the ALJ asked about the related symptoms during the hearing, Plaintiff herself testified that the problematic symptoms were "mostly my shoulder and my elbow." Tr. 46. Further, as the

[4] Plaintiff alleges that the provider at the April 2025 encounter was a physician assistant, not Dr. Arcand. This is inconsistent with the record that lists the provider as Dr. Arcand; the physician assistant is mentioned as having participated to the extent of "encounter reviewed and signed." Tr. 558. What matters is that neither Dr. Arcand nor this physician assistant diagnosed cervical radiculopathy and/or CTS.

Court's review of the record confirms, the ALJ's Step Two findings do not amount to an improper lay analysis of complex medical documents; they are simply an accurate reading of the diagnoses listed in the medical records. What remains is Plaintiff's troublesome contention that the Court should ignore the diagnosing physician and remand the case for further analysis based on symptoms that Plaintiff argues might support these diagnoses. That the Court declines to do.

At bottom, the ALJ accepted all of Dr. Arcand's diagnoses and considered all of Plaintiff's related symptoms[5] in making his RFC findings consistent with the settled principle that "it is the effects or manifestations of the illness which control the proper outcome of a disability proceeding." Julee A. v. O'Malley, C.A. No 23-206MSM, 2024 WL 1880762, at *7 (D.R.I. Apr. 30, 2024), adopted, 2024 WL 2701643 (D.R.I. May 24, 2024). And there is no medical opinion supportive of Plaintiff's argument that her left shoulder/arm/elbow symptoms resulted in a more limited RFC. See Rosado v. Kijakazi, No. 20-30124, 2021 WL 5567397, at *8 (D. Mass. Nov. 29, 2021) (claim of Step Two error fails when claimant has not identified any evidence to support contention that RFC was deficient). The ALJ's Step Two determination is affirmed.

**B. ALJ's RFC Is More Limited Than RFC of Non-Examining Experts**

Plaintiff's other argument is even less compelling. She complains that it is reversible error for an ALJ to find that a claimant is more restricted than is reflected in the findings of the non-examining experts. The argument fails because it is well settled that "[t]he fact that the ALJ imposed a more restrictive limitation than the state agency consultants imposed is not error." Amanda I. v. Kijakazi, No. 1:22-cv-00183-JAW, 2023 WL 1860174, at *3 (D. Me. Feb. 9,

[5] Plaintiff's argument that the ALJ did not mention in his decision the University Orthopedics records from the period after her fall in April 2024 is also not accurate. To the contrary, the decision is clear that the ALJ closely considered the exhibits (14F and 17F) containing most of those records. See Tr. 18. Indeed, the decision adopts Dr. Arcand's diagnoses verbatim.

2023), affirmed, 2023 WL 3000784 (D. Me. Apr. 19, 2023); see Soto-Martinez v. Kijakazi, Civil No. 21-1445, 2022 WL 3593359, at *6 (D.P.R. Aug. 23, 2022) ("[t]here is substantial record evidence . . . where the ALJ went beyond what the medical expert and the state agency physicians recommended and limited Plaintiff to the least restrictive work category"); Lee v. Berryhill, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *5 (D. Me. Feb. 8, 2018) (ALJ can give claimant "benefit of the doubt" and recognize RFC limitations beyond those expressed in opinion that ALJ might otherwise rely on as substantial evidence of less restrictive RFC).

## V. Conclusion

Having reviewed the entirety of this record mindful that it is the Court's "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion," Burton v. Kijakazi, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks omitted), the Court finds that the ALJ has made a well-supported and legally-correct decision. Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 10) is GRANTED. The Clerk's Office is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 1, 2026